JOHN HEWITT, JR., *vs.* BOSTON STRAW BOARD COMPANY.

Suffolk.    January 13, 1913. — March 31, 1913.

Present: RUGG, C. J. MORTON, LORING, BRALEY, & SHELDON, JJ.

*Bankruptcy,* Preference.  *Agency.    Attorney at Law.*

Where a creditor of one who is insolvent receives from the debtor within four months
of his being adjudicated a bankrupt a payment which enables such creditor to
obtain a greater percentage of his debt than any other of the creditors of the
insolvent of the same class, such a payment can be recovered by a trustee of the
bankrupt, afterwards appointed, as a preference under § 60, a, b, of the bank-
ruptcy act of 1898 as amended by the U. S. Sts. of 1903, c. 487, § 13, and of
1910, c. 412, § 11, if such creditor when he receives such payment has informa-
tion which should lead to knowledge that the payment will effect a prefer-
ence, although by an honest error of judgment he misinterprets this information
and forms the opinion that the payment will not effect a preference.

The fact, that an attorney for a creditor, at the time of receiving for his client from
a debtor a payment on account of an overdue debt, is told facts showing that
the debtor is insolvent and, understanding the purpose as well as the legal
effect of the payment, declares himself willing to take the hazard of a re-
covery of the amount of the payment by a trustee in bankruptcy if the debtor
is adjudicated a bankrupt within four months, will warrant a finding, in an
action by a trustee in bankruptcy of the debtor afterwards appointed to re-
cover the amount of the payment as a preference, that the attorney had rea-
sonable cause to believe that when the payment was made the debtor was
insolvent and that the payment was a preference; and such knowledge of the
attorney is binding upon the creditor under the bankruptcy act of 1898, § 60,
b, as amended by the U. S. Sts. of 1903, c. 487, § 13, and of 1910, c. 412, § 11.

At the trial of an action by a trustee in bankruptcy to recover the amount of an
alleged preference under the bankruptcy act of 1898, § 60, a, b, as amended by
the U. S. Sts. of 1903, c. 487, § 13, and of 1910, c. 412, § 11, there was evidence
that the insolvent debtor, when he owed various creditors $6,500 and possessed
assets worth $4,500, sold half of his assets for $1,500 and from the proceeds
paid $626 to the defendant, to whom he owed $816. *Held,* that a finding was
warranted that the payment to the defendant enabled him to obtain a greater
percentage of his debt than any other of the creditors of the same class.

CONTRACT by the trustee in bankruptcy of the Corperdix
Paper Tube Company, a corporation, for the amount of a prefer-
ence* alleged to have been paid to the defendant by the bankrupt.
Writ dated August 21, 1911.

---

* The bankruptcy act of 1898, § 60, a, b, as amended by the U. S. Sts. of
.1903, c. 487, § 13, and of 1910, c. 412, § 11, reads as follows:

a.  "A person shall be deemed to have given a preference if, being insolvent,

In the Superior Court the case was heard by *Dana,* J., without a jury.

It appeared that on August 1, 1910, the defendant brought an action against the Corperdix Paper Tube Company to collect a debt of $816.24 and placed a keeper in that company's place of business. On August 12, that company sold about one half of its plant for $1,500, and transferred to the defendant three notes, amounting to $626.23, which it had received from the purchaser, and that the defendant then removed the keeper, it being understood that the balance of the defendant's account should be paid when the Corperdix Paper Tube Company had completed a certain cup machine, upon the completion of which it expected to realize a sum sufficient to take care of all its indebtedness. The cup machine referred to never was completed. The notes given to the defendant were paid to the defendant as they matured.

There was testimony by an officer of the Corperdix Paper Tube Company to the effect that on August 12, 1910, before the sale of about one half of its plant, its assets at a fair valuation were worth $4,500, and its liabilities, before the payment to the defend-

he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

b. "If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment· or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

ant, were $6,500. In the evidence introduced by the defendant was a list of the creditors of the Corperdix Paper Tube Company on August 12, 1910, which contained the names of over forty creditors to whom the corporation owed $6,224.72, the debts varying in amount from $1 to $1,937.90.

There was evidence tending to show that at a conference on August 12, 1910, when the payment to the defendant was made, the subject of the possible bankruptcy of the Corperdix Paper Tube Company was discussed by the attorney for the defendant and the officers of the Corperdix Paper Tube Company, and that one of the officers of the Corperdix Paper Tube Company was reluctant to make the payment because he thought that by so doing the corporation would enable the defendant to receive a greater percentage of its claim than other creditors could receive at that time, as the assets of that company before the sale would not exceed $4,500 in value and its liabilities before payment to the defendant would approximate $6,500, and that he so told the attorney for the defendant; and that the defendant's attorney replied, in substance, that if the company went into bankruptcy the defendant would be obliged to repay the payment made at that time if such payment constituted a voidable preference, but that he, the attorney for the defendant, would take his chances as to that.

At the close of the evidence the judge at the request of the defendant, made, among other rulings, the following: "The plaintiff must prove that the payment by the Corperdix Paper Tube Company to the defendant on August 12, 1910 had the effect of enabling the defendant to receive a greater percentage of its claim than other creditors of the same class could at that time have received."

The defendant also asked the judge to give the following rulings, which were refused:

"1. Upon the evidence the plaintiff has failed to sustain the burden, and the defendant is entitled to a finding."

"7. There was no evidence bearing on the character of the indebtedness of the Corperdix Paper Tube Company to other creditors, nor the class to which other creditors belonged."

"10. The plaintiff must prove that, at a fair valuation, the assets of the Corperdix Paper Tube Company, which he as trustee

received, will not enable the estate to pay a percentage to creditors of the same class as great as the defendant received.

"11. The plaintiff introduced no evidence of the value of assets in his hands as trustee, or the percentage the estate could pay."

There was a finding for the plaintiff in the sum of $641.67; and the defendant alleged exceptions.

*S. A. Dearborn*, for the defendant.

*F. E. Bradbury*, for the plaintiff.

BRALEY, J.  It having appeared, that at a fair valuation the bankrupt's property at the date of transfer was insufficient in amount to pay its debts, the judge was warranted in finding it to have been insolvent as defined by the act itself. U. S. St. of 1898, c. 541, § 1, cl. 15. *Eau Claire National Bank* v. *Jackman*, 204 U. S. 522, 532. See *Bailey* v. *Wood*, 211 Mass. 37, 44, 45.

But, even if the corporation was insolvent, the plaintiff must show, that "the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference." U. S. St. of 1898, c. 541, § 60, b, as amended by U. S. St. of 1910, c. 412, § 11. *Kaufman* v. *Tredway*, 195 U. S. 271. *Beals* v. *Quinn*, 101 Mass. 262. *Otis* v. *Hadley*, 112 Mass. 100.

The bankrupt's property had been attached by the defendant to enforce payment of an antecedent unsecured indebtedness for goods sold and delivered, and after effecting a sale of nearly one half of the manufacturing plant the bankrupt transferred within four months prior to the date of adjudication, and in part satisfaction of the debt, three promissory notes received in part payment from the purchaser.

Where there is reasonable cause to believe, that at the date of transfer within the statutory period the debtor is insolvent, and payment is accepted of a debt overdue, it is immaterial whether the creditor actually believes what may have been disclosed as to the true state of affairs.  If he prefers to draw inferences favorable to himself, and to ignore information which would have led to knowledge that his debtor was in failing circumstances, he cannot set up his own judgment to the contrary even if honestly entertained, as a reason why he should be permitted to retain a prohibited advantage. *Forbes* v. *Howe*, 102 Mass. 427. *Whipple*

v. *Bond*, 164 Mass. 182.   *In re George*, 1 Lowell, 409, 411.   *Toof* v. *Martin*, 13 Wall. 40.

By the express words of the amendatory act which are merely declaratory of the rule of law, that knowledge possessed by an agent may be 'imputed to his principal, the defendant is bound by the information acquired by its attorney who made the attachment and acted for it in effecting the settlement.   *Rogers* v. *Palmer,* 102 U. S. 263.   *Sartwell* v. *North*, 144 Mass. 188.   The judge from the statements of the bankrupt's officers well might find, that the defendant's attorney upon being fully informed as to the impaired resources of the bankrupt company, and understanding the object as well as the legal effect of the transfer, expressed himself as willing to take the hazard of a recovery back by the trustee, if bankruptcy intervened.

The bankrupt and the defendant must be presumed to have known, that what had been done resulted in a preference, even if the form of transfer consisted of securities received by the bankrupt from a third party.   *Sawyer* v. *Turpin*, 2 Lowell, 29.   *Western Tie & Timber Co.* v. *Brown*, 196 U. S. 502, 509.   *Dickinson* v. *National Security Bank of Richmond*, 49 C. C. A. 84; 110 Fed. Rep. 353.   U. S. St. of 1898, c. 541, § 60, a, b, as amended by the U. S. Sts. of 1903, c. 487, § 13, and of 1910, c. 412, § 11.

It is maintained, however, that the evidence does not disclose the class of creditors to which the defendant belonged, and there is no preference, because it cannot be determined whether a greater percentage of its debt had been obtained than the amount which other creditors of the same class would receive.   U. S. St. of 1898, c. 541, § 60, a.   The defendant at the date of the transaction ranked with the class of unsecured creditors shown by the list of accounts payable, which apparently were provable debts. It is not even suggested that they could have been paid in full by the bankrupt, although entitled to share equally with the defendant in the distribution of its property.   Nor is it contended, that the trustee has received sufficient assets to enable him to satisfy fully the claims which have been allowed.   *Kimball* v. *Dresser*, 98 Maine, 519.   A transfer of the character shown materially diminished the bankrupt's estate.   If allowed to stand it would defeat the purpose of the bankruptcy act, which, after priorities are satisfied, is the distribution of the bankrupt's property

equally among all his creditors whether secured or unsecured. U. S. St. of 1898, c. 541, §§ 63, 64, 67, and the several subsections. *In re Hapgood,* 2 Lowell, 200. *Swarts* v. *Fourth National Bank of St. Louis,* 54 C. C. A. 387; 117 Fed. Rep. 1. *Jackman* v. *Eau Claire National Bank,* 125 Wis. 465, 479. *National Bank of Newport* v. *National Herkimer County Bank,* 225 U. S. 178.

The plaintiff accordingly can recover the amount of the notes with interest from the date of the preferential payment. *Clarion Bank* v. *Jones,* 21 Wall. 325.

*Exceptions overruled.*