PHILIP W. JACOBS, trustee in bankruptcy, *vs.* JACOB SAPERSTEIN.

Suffolk.   October 20, 1916. — December 1, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Bankruptcy*, Preference.   *Evidence*, Presumptions and burden of proof.

In an action by a trustee in bankruptcy under §§ 60 a and 60 b of the bank-
ruptcy act of 1898 as amended to recover certain sums alleged to have been
paid by the bankrupt to the defendant as preferences, in order to maintain the
burden of proving the essential element of liability required by the act, that
the defendant when he received the sums had reasonable cause to believe that
the acceptance of the payment would result in a preference as defined by the
statute, it is necessary to show only such substantial facts as will warrant the
inference that the defendant knew or ought to have known of the bankrupt's
financial condition.

At the trial of such a case a finding is warranted that such burden is maintained
where the evidence tends to show that the defendant and the bankrupt two and
one half years before the bankrupty had been partners, that then the defendant
had sold his interest to the bankrupt for promissory notes, that during the en-
tire period after that they had been friendly and the defendant had been at the
bankrupt's store frequently and had observed facts from which he should have
known that the conduct of the bankrupt's business was not a success, had ex-
changed checks many times with him and knew that the bankrupt was constantly
hiring money, often in small amounts; and that, although at a time three months
before his bankruptcy the bankrupt had owed about $13,800 and had had
assets amounting only to about $6,000 and during the three months before his
bankruptcy he had sold goods amounting to only about $1,380 more than he
had purchased, nevertheless during that same period he had paid to the defend-
ant $2,031 and to his other creditors only $1,286.

CONTRACT by the trustee in bankruptcy of Robert M. Robin-
son to recover the amount of payments alleged to have been
preferences under § 60 a of the bankruptcy act of 1898 as
amended.   Writ dated February 10, 1914.

In the Superior Court the case was tried before *Raymond*, J.
Besides the evidence which is described in the opinion, it appeared
that the bankrupt filed his petition and was adjudged a bankrupt
on December 31, 1913, that his schedules showed liabilities
amounting to $19,548.96 and assets amounting to $3,004.87, from
which, exclusive of the book accounts, a receiver realized $750.
The parties agreed that on October 1, 1913, the bankrupt's lia-
bilities were $13,874.54 and his assets $5,998.98; that during

October, November and December he purchased goods amounting to $11,183.62 and sold goods amounting to $12,569.38; that during that period he paid creditors other than the defendant $1,286.56, that in October and November he paid the defendant $2,031.59, and that all payments made for indebtedness were for indebtedness previous to October 1, 1913.

At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. B. Jacobs*, for the plaintiff.

*J. H. Blanchard*, for the defendant.

BRALEY, J. The jury would have been justified in finding on the evidence of the bankrupt and of the expert accountant who had examined the books, that through the months of October and November, 1913, when the defendant received the payments which the trustee seeks to recover, the bankrupt, a trader, was unable to meet his financial obligations as they matured in the ordinary course of business. And upon a comparison of assets and liabilities as shown by the record it clearly appears, that during that time as well as at the date of adjudication he was hopelessly insolvent. U. S. St. 1898, c. 541, § 1, (15). *Hewitt v. Boston Straw Board Co.* 214 Mass. 260, 263. The plaintiff being no longer required to prove the intention of the bankrupt to confer a preference, and there being no contention that if the payments stand the defendant will not obtain a greater percentage than other creditors of the same class, or that the payments were not made within four months prior to adjudication, the only question for decision is, whether there was any evidence for the jury, that when the payments were received the defendant had reasonable cause to believe that his debtor was insolvent. *Hewitt v. Boston Straw Board Co.* 214 Mass. 260, 264, 265. *Rogers v. American Halibut Co.* 216 Mass. 227, 229, and cases and statutes there cited.

The trustee need not prove absolute knowledge, but only such circumstances as would lead an intelligent and prudent business man to entertain the belief that the transfer would give him a preference over other creditors. *Rogers v. American Halibut Co.* 216 Mass. 227, 229, 230. *In re Eggert*, 102 Fed. Rep. 735. The question ordinarily is one of fact dependent on the evidence in each case, and no rule can be formulated by which all cases

can be mathematically adjusted. *Batchelder* v. *Home National Bank of Milford,* 218 Mass. 420, 422. *Brown* v. *Pelonsky,* 210 Mass. 502. *Bicknell* v. *Mellett,* 160 Mass. 328, 329. *Forbes* v. *Howe,* 102 Mass. 427, 437. *Putnam* v. *United States Trust Co.* 223 Mass. 199. *In re Andrews,* 135 Fed. Rep. 599. *Kaufman* v. *Tredway,* 195 U. S. 271. Direct evidence may be unobtainable. But this is not essential. The creditor comes within the inhibition where the substantial facts are of such significance as fairly to warrant the inference that he knew or ought to have known of the bankrupt's financial condition.

The parties had been associated as partners, but the bankrupt, having purchased the interest of the defendant giving in payment his promissory notes maturing at different dates, continued the business on his own account until his failure. The jury would have been warranted in finding that during this period of two and one half years the defendant visited the place of business of the bankrupt, with whom "he was very friendly," "about once in every two weeks," and whenever the bankrupt "needed assistance" he "gave it to him and continued to do it down to the spring or summer previous to bankruptcy." It further appeared that some of the notes given at the dissolution were not paid at maturity, but were renewed from time to time, during which the bankrupt and the defendant were "swapping and exchanging checks," as the jury could find, for the financial accommodation and assistance of the bankrupt. It also was in evidence that the notes for money lent were not paid until overdue, while some of them were renewed. The bankrupt testified that in the spring of 1913 he "took a larger place of business . . . and increased his purchases upon the same terms of credit, and when the debts matured he had to borrow to meet the indebtedness and he borrowed from Saperstein." The defendant was called by the plaintiff and while he testified that on his visits to the bankrupt's store he observed no diminution of the stock of clothing as displayed on the shelves, the jury from the volume of sales in the three months preceding bankruptcy could have found, that there must have been a visible, continuous, and substantial depletion of which the defendant from his experience in this line of trade must have been aware. If with the circumstances of the personal relations of the debtor and the defendant, the practice of exchanging or "swapping"

checks, the opportunities for observation of the bankrupt's stock of merchandise and the constant hiring of money, often in small amounts, is coupled the fact which could have been found of voluntary payments aggregating a large amount within fifty days of adjudication, although the bankrupt apparently had been unable to pay in full the notes given in the partnership settlement, the jury well could say that the defendant had notice if not actual knowledge of material conditions sufficient to have aroused the attention of an intelligent man acquainted with the nature and character of his debtor's business, and to have put him upon inquiry. *Rubenstein* v. *Lottow,* 223 Mass. 227. *Buchanan* v. *Smith,* 16 Wall. 277. The defendant accordingly is chargeable with notice of all the facts relating to the bankrupt's financial situation which such inquiry would have developed and disclosed. *Forbes* v. *Howe,* 102 Mass. 427. *Hewitt* v. *Boston Straw Board Co.* 214 Mass. 260, 263. *Rogers* v. *American Halibut Co.* 216 Mass. 227. *Batchelder* v. *Home National Bank of Milford,* 218 Mass. 420. *Merchants' National Bank* v. *Cook,* 95 U. S. 342.

The verdict for the defendant having been directed improperly, the exceptions must be sustained.

*So ordered.*