MABEL E. PUFFER *vs.* ARTHUR G. HAZZARD & others.

Middlesex.    October 18, 1921. — November 26, 1921.

Present: RUGG, C.J., CROSBY, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction,* To compel reconveyance of personal property conveyed by insane person.    *Insane Person.    Bona Fide Purchaser.*

In a suit in equity brought on behalf of an insane, unmarried white woman forty-nine years of age by her temporary guardian appointed by the Probate Court against an unmarried colored man about thirty-five years of age, who had been choreman for the plaintiff's father during his life and thereafter for about four years for the plaintiff, when she lived alone, and who, knowing the plaintiff's condition, had procured from her large sums of money and other valuable personal property and had attempted to marry her, had given portions of the money to the other defendants, his brother, two attorneys at law and one who furnished bail to him when he was arrested upon a warrant charging larceny from the plaintiff, the entire evidence was reported by a commissioner. A final decree was entered adjudging the conveyances to the choreman void and ordering the return of the property to the plaintiff.   The defendants appealed. *Held,* that

(1) Findings were warranted that the choreman procured the property from the plaintiff without consideration and with knowledge of her mental unsoundness;

(2) Further findings were warranted that the choreman, if not impecunious, was a person of practically no financial ability; that the relations between him and the plaintiff except as to money matters were widely discussed in the public press and that the defendants knew of this discussion;

(3) Further findings were warranted that the defendant brother of the choreman and the defendant who furnished bail to the choreman received money from him, knowing his financial condition, after his arrest for larceny and after he had told them that the money came from the plaintiff;

(4) Findings were warranted that the attorneys at law received money from the defendant choreman after his arrest for larceny and when they knew that the money was claimed as belonging to the plaintiff;

(5) Findings and inferences were warranted that all of the defendants other than the choreman, when they received the money in question from the choreman, did not receive it in good faith and without notice;

(6) The final decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on July 10, 1919, and afterwards amended, on behalf of Mabel E. Puffer by George L. Wilson, her temporary guardian appointed by the Probate Court for the county of Middlesex, against Arthur G. Hazzard, Mary I. Hazzard, Bertha Hazzard, Annie Roland, William

Hazzard, John H. Eacrett, Daniel C. Parsons, Cornelius J. O'Neil and William H. Lewis, alleging in substance that the plaintiff, while of unsound mind and through fraud of the defendants Hazzard, had conveyed to the defendant Arthur G. Hazzard, who knew of her condition, without consideration, certain money and other personal property, and that certain portions thereof were conveyed by Arthur G. Hazzard to the other defendants severally, who had "full knowledge of the circumstances under which said Arthur G. Hazzard obtained" the property. The prayers of the bill were that the several conveyances be declared void and that the property be returned to the plaintiff.

The suit was heard by *Keating*, J., a commissioner having been appointed under Equity Rule 35, who took and reported the testimony. Material evidence and findings of the judge are described in the opinion. By order of the judge a final decree was entered, dismissing the bill as to Mary I. Hazzard, Bertha Hazzard, Annie Roland and Daniel C. Parsons, adjudging the conveyances by the plaintiff to Arthur G. Hazzard void, and directing the other defendants to return to the plaintiff the property and money received by them severally, with interest, and the defendant Arthur G. Hazzard to return certain of the property and money still in his possession, with interest, and assessing costs against Arthur G. Hazzard. The defendants appealed.

*A. P. Gay*, for the defendants.

*J. M. Maloney*, (*G. L. Wilson* with him) for the plaintiff.

JENNEY, J. The plaintiff, an unmarried white woman, was born in Ayer, Massachusetts, and at the time of the events herein described was about forty-nine years old. She lived with her father in Ayer until his death in 1915, and afterwards lived alone. Arthur G. Hazzard, one of the defendants, whom she had known about fifteen years, did chores for her father and after his death performed like services for her. He was colored, about thirty-five years old, unmarried, and had practically no property. He earned his living by work of the kind performed by him for the plaintiff.

The plaintiff had "an insane delusion that it was ordained by God that she should marry Charles H. McKee, otherwise called Charles McKee, who appeared, as she believed, in the year 1919 and before and after 1919, in the likeness of different persons.

No such person as Charles McKee or Charles H. McKee, actually existed.

"About March 1, 1919, she asked the defendant Arthur Garfield Hazzard if he was Charles McKee and he said he was. Believing that he . . . was Charles McKee in the likeness of Arthur Garfield Hazzard, she gave him the money and other personal property," and "in June, 1919, she went with him to Concord, New Hampshire, for the purpose of being married. The marriage ceremony was never performed. Legal proceedings were instituted against . . . [him], and he engaged as counsel the defendants Lewis and O'Neil. From the money which Arthur Garfield Hazzard received from . . . [the plaintiff], the defendant Lewis received $1,500 as a retainer or fee for services rendered or to be rendered, and the defendant O'Neil received $500 for a like purpose. The defendant Eacrett furnished bail for . . . Arthur Garfield Hazzard and received as compensation $450 out of the money which . . . [he] received from . . . [the plaintiff]. The defendant William Hazzard, brother of Arthur Garfield Hazzard, received from . . . [him] $50 of the money which . . . [he] had received from . . . [the plaintiff]." The judge found that "the defendants Lewis, O'Neil, William Hazzard and Eacrett were not in the position of *bona fide* purchasers for value without notice when they received said sums of money."

The money given by the plaintiff to Arthur G. Hazzard amounted to $5,700 and was withdrawn by her from various banks. The other personal property consisted of numerous articles comprising for the most part household furniture and furnishings. Substantially all these gifts were made between March 1, 1919, and July 1, of that year. When these gifts were made, the plaintiff was "not mentally competent" to make them.

A decree was entered, reciting that "the gifts by Mabel E. Puffer to the defendant Arthur Garfield Hazzard of money and other personal property . . . were invalid and did not divest title of said Puffer thereto." It ordered him to return to the plaintiff specific personal property; to execute such instruments as were necessary to enable the plaintiff to get possession of other personal property, which he had received from her and which was then in possession of the police department of Ayer; and to pay to her $3,200 with interest. The decree further ordered the de-

fendant Lewis to pay to the plaintiff $1,500, the defendant O'Neil, $500, the defendant Eacrett, $450, and the defendant William Hazzard, $50. The remaining provisions of the decree are not now material.

The defendants' appeal is argued only in behalf of Lewis, O'Neil, Eacrett and William Hazzard. The remaining defendant as to whom relief was given is Arthur G. Hazzard. It is not claimed that the decree as against him was not justified by the findings of the judge and warranted by the evidence. *Brewster* v. *Weston,* 235 Mass. 14.

It is clear that if the moneys were not received by the defendants for value in good faith and without notice, the decree was warranted. *Spaulding* v. *Kendrick,* 172 Mass. 71. *Newell* v. *Hadley,* 206 Mass. 335, 346. *Pratt* v. *Higginson,* 230 Mass. 256. Neither knowledge of suspicious circumstances, nor doubts as to the transferor's title, nor even gross negligence, single or combined, defeats the titles of the defendants, unless amounting to proof of want of good faith. *Fillebrown* v. *Hayward,* 190 Mass. 472, 480. "The suspicious circumstances, if any, attending the transaction . . . [are] to be considered . . . as bearing upon this issue." *Smith* v. *Livingston,* 111 Mass. 342, 345.

These defendants who received money directly or indirectly from Arthur G. Hazzard urge that they were in the position of *bona fide* purchasers for value without notice at the time of receipt thereof; and that the judge was not warranted in finding to the contrary. This contention cannot be sustained. The evidence was taken by a commissioner and is before us.

No question is made but that the findings that the money received by these defendants was in fact obtained by Arthur G. Hazzard from the plaintiff were supported by the evidence. The judge, moreover, was warranted in finding that the defendants knew that Arthur G. Hazzard, if not impecunious, was a person of practically no financial ability. It appeared from evidence introduced by them that the relations between Arthur G. Hazzard and Miss Puffer, except as to money matters, were widely discussed in the public press and that the defendants knew of this discussion. The judge could have found from the attendant circumstances and the express evidence and the fair inferences which could be drawn therefrom, that these defendants not only

had knowledge as to Arthur G. Hazzard's financial condition, but that they knew at the time they received the money it did not actually belong to him. On the contradictory evidence it may have been found that the moneys were not received until after these defendants all had direct notice that the money in Hazzard's possession had been obtained from Miss Puffer while she was insane. No useful purpose will be subserved by a recital of the details of the evidence. It has been examined with care and at length.

It is sufficient to state that it warranted the finding as to the defendant William Hazzard, that he knew of his brother's financial condition and of his relations with Miss Puffer; that he received $500 from him after he had been arrested upon a complaint charging larceny of her property; and that his brother told him that he had received the money from her. These facts, in the light of all the testimony, warranted a finding that he did not take the money in good faith and without notice. His appearance and the general nature of his testimony may have been important in this connection. As to the defendant Eacrett, it could have been found that he received $450 from William Hazzard after he knew of the complaint for larceny, and other findings of like effect as those justified against William Hazzard might have been made against him. He did not testify in his own behalf. The finding that he did not receive the money in good faith and without notice was warranted. As to the defendants O'Neil and Lewis, William Hazzard testified that he was present when $2,000 was paid to Lewis in the presence of O'Neil, and when $500 of that amount was paid by Lewis to O'Neil; he further testified that he did not know his brother had any other money until after he received from him the $500 hereinbefore referred to. This warranted the finding that the money was paid to Lewis after the payment to William Hazzard, and hence after Arthur G. Hazzard had been arrested upon the complaint for larceny. It also justified a finding that O'Neil and Lewis both knew that it was claimed that Arthur G. Hazzard had without right obtained possession of a large amount of Miss Puffer's money.

From these facts, in the setting in which they were placed, including Arthur G. Hazzard's previous manner of life and prior financial ability, and upon other evidence which need not be

recited, the findings of the judge as to their good faith and notice were warranted. *Underwood* v. *Winslow*, 231 Mass. 595. It follows that the decree of the Superior Court must be affirmed with costs of the appeal as against the defendants William Hazzard, Eacrett, Lewis and O'Neil.

*So ordered.*