## MARY J. SMITH vs. LINA L. KNAPP.

Bristol.    October 26, 1936. — June 28, 1937.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Trust*, What constitutes.    *Bona Fide Purchaser.    Payment.    Fraud.
*Equity Jurisdiction*, Tracing of property.

While a mortgagor of real estate, by accepting a discharge of the mort-
gage procured by one who owed him an amount equal to the sum paid
for the discharge, ratified and adopted the payment and discharge as
a satisfaction of the debt, he did not ratify fraud of his debtor in pro-
curing from a third person funds used for that purpose if he neither
knew nor had reason to know of such fraud; he was a *bona fide* pur-
chaser of the discharge; and his land, thus discharged of the mort-
gage, was not subject to a trust in favor of the defrauded person.

BILL IN EQUITY, begun by a writ of summons and attach-
ment in the Superior Court dated December 12, 1932.

After a hearing by *Brown*, J., a final decree was entered
dismissing the bill.    The plaintiff appealed.

*P. Barnet*, for the plaintiff.

*G. P. Ponte*, for the defendant.

RUGG, C.J.    This suit in equity is brought by the plain-
tiff to establish a trust for her benefit in certain real estate
of the defendant.    It is alleged in the bill that, pursuant to
a conspiracy between the defendant and one Helen C. Tripp,
the latter by false representations known to the defendant,
induced the plaintiff to turn over to her $2,000 to be invested
for the benefit of the plaintiff in securities; that the defend-
ant procured Miss Tripp to apply $1,500 of the money so
obtained in payment of an amount due on a mortgage on
real estate of the defendant; that part of the money so
obtained has been returned to the plaintiff, leaving $750
unpaid.    The prayer of the bill was that the real estate of
the defendant be impressed with a trust for this amount for
the benefit of the plaintiff.    The answer of the defendant
put in issue the essential allegations of the bill.    The case
was referred to a master, who filed a report and a supple-

mental report. The evidence is not reported. An inter-
locutory decree was entered overruling the exceptions of the
plaintiff and confirming the report and the supplementary
report. A final decree was entered dismissing the bill. The
plaintiff appealed from the final decree. As no appeal was
taken from the interlocutory decree, the exceptions cannot
be considered unless the final decree is erroneously affected
thereby. G. L. (Ter. Ed.) c. 214, § 27. *Reno* v. *Cotter,* 236
Mass. 556, 560. *Nochemson* v. *Aronson,* 279 Mass. 278, 280.

The master found these facts: The defendant and Miss
Tripp had kept house together on the premises of the defend-
ant since 1927. They lived together as friends without any
fixed price for Miss Tripp's board and room, but under an
arrangement whereby each contributed to their common
living expenses from time to time as their respective circum-
stances would permit. No record was kept of the amount
expended by either of them and no accounting was ever had
or attempted. In 1927, the defendant borrowed $1,500
from the New Bedford Co-operative Bank (hereafter called
the bank) and gave as security a mortgage on her real estate,
located in Dartmouth in this Commonwealth, which pro-
vided for monthly payments of $15.50 to the bank. Miss
Tripp at times paid monthly instalments to the bank
as a contribution to the living expense account. Upon the
receipt of any notices of arrears from the bank, the defend-
ant gave them to Miss Tripp. Miss Tripp then interviewed
the treasurer, whom she represented to the defendant she
knew well. During the period from 1927 to 1932, Miss Tripp
had not contributed a great deal to the common expenses
but had told the defendant that her mother had created a
$4,000 trust fund which would pass to Miss Tripp on her
mother's death, and that when she received this money
she would pay the defendant what was proper. After the
mother's death in March, 1931, Miss Tripp represented to
the defendant that she had conferred with the treasurer of
the bank about the arrears due on the mortgage and had
received his assurance that the matter of paying could
await the settlement of the estate of Miss Tripp's mother.
The defendant was not acquainted with the plaintiff and

had no knowledge of her property, and there was never any talk between the defendant and Miss Tripp about obtaining any money from the plaintiff.  On July 12, 1932, Miss Tripp, by false and fraudulent representations, induced the plaintiff to turn over to her the sum of $2,000 on the understanding that it was to be invested by Miss Tripp in a syndicate in Providence, Rhode Island.  On the same date Miss Tripp applied $1,400 of that money in payment of the balance due on the note of the defendant to the bank, and the bank on the same date discharged its mortgage.  The defendant first learned of the payment of the mortgage by Miss Tripp when the latter telephoned her that she was at the bank and paying it off.  The defendant first learned in October or November, 1932, that the money was obtained from the plaintiff by Miss Tripp when she was arrested on a charge of larceny on the plaintiff's complaint.  Members of Miss Tripp's family have made restitution to the plaintiff in her behalf to the extent of $1,250.  The defendant is not now the owner of the property which had been covered by the mortgage.*  The master was unable to find on the evidence that the defendant connived or conspired with Miss Tripp to obtain any money from the plaintiff, or that the defendant had any knowledge of how or where the money was obtained when it was applied to the discharge of the mortgage.  The master found that, while "there was no real debtor-creditor relationship between Miss Tripp and the defendant at the time of the payment of the mortgage," the situation concerning their friendly arrangement as to joint living expenses was such that the defendant could reasonably and did expect that Miss Tripp, when her circumstances would permit, would make a substantial payment to her or for her benefit, and that, in view of Miss Tripp's earlier representations as to her interest in her mother's estate and as to the arrangements previously made with the treasurer of the bank, the defendant did not suspect and had no reasonable ground to suspect, that the money

---

* The master found: "The defendant is not now the owner of the property which had been covered by the mortgage, having sold the same after the attachment thereof in this suit, and subject thereto."— REPORTER.

used to pay the mortgage debt had been wrongfully obtained. There was no general or continuing relationship of principal and agent between the defendant and Miss Tripp. On several occasions Miss Tripp had consulted the treasurer of the bank in relation to the default, in order to forestall foreclosure by the bank of the mortgage on the defendant's property. In doing this Miss Tripp acted for the defendant's benefit and at her request. But the acts of Miss Tripp in obtaining money from the plaintiff and in applying a portion thereof in payment of the mortgage were done by Miss Tripp on her own initiative and without any express or implied authority from the defendant. Miss Tripp did not act as agent for the defendant at the time she paid off the mortgage on the defendant's property with money fraudulently obtained from the plaintiff.

Where the evidence upon which the findings of a master are based is not reported, the findings of fact are final and must be accepted as true unless they are mutually inconsistent or plainly wrong. *Prudential Trust Co.* v. *McCarter,* 271 Mass. 132, 139. *Bullivant* v. *First National Bank of Boston,* 246 Mass. 324, 332. *Horvitz* v. *Golen,* 288 Mass. 375. The finding is explicit to the effect that the defendant had no acquaintance with the plaintiff, did not conspire with Miss Tripp, and had no knowledge as to the source from which the money was obtained wherewith the mortgage was paid. Every essential finding of fact is in favor of the defendant. The main findings are not inconsistent with subsidiary facts found, but are supported by them.

The right of the plaintiff to relief in this suit rests wholly upon the contention that the defendant was not a *bona fide* purchaser of the discharge of the mortgage. *Shaw* v. *Spencer,* 100 Mass. 382, 388. *Cotton* v. *Dacey,* 61 Fed. 481. Although the master found that there was "no real debtor-creditor relationship between Miss Tripp and the defendant," it is to be inferred from the other facts found that there was an implied contractual obligation on the part of Miss Tripp to pay the defendant for her living expenses. *James* v. *Cummings,* 132 Mass. 78. *Wirth* v. *Kuehn,* 191 Mass. 51. *Evers* v. *Gilfoil,* 247 Mass. 219. *French* v. *Bray,*

263 Mass. 121, 123. *Therrien* v. *LeBlanc*, 282 Mass. 328. *Macomber* v. *King*, 288 Mass. 381, 383. The final decree in favor of the defendant imports an inference that this obligation of Miss Tripp was equal to the amount which she had paid on the mortgage, and that the discharge was accepted in satisfaction of that obligation. These inferences were warranted. *Anderson* v. *Bean*, 272 Mass. 432, 437. The preëxisting debt of Miss Tripp to the defendant was sufficient to make the latter a purchaser for value. *Wood* v. *Boylston National Bank*, 129 Mass. 358. Am. Law Inst. Restatement: Trusts, § 304. The finding is also plain to the effect that Miss Tripp did not act as the agent of the defendant in paying off the mortgage. When Miss Tripp paid the mortgage to the bank without any express agreement in advance to do it in discharge of her obligation to the defendant, it was necessary that the defendant ratify or adopt the payment made by Miss Tripp in order to make the payment effective as a payment of the obligation of the defendant to the bank. *Edgeworth Co.* v. *Wetherbee*, 6 Gray, 166, 167. Am. Law Inst. Restatement: Contracts, § 421. Williston on Contracts, § 1857 *et seq.* It is to be inferred that the defendant ratified or adopted this payment. This doubtless constituted a complete discharge of the mortgage. *Spaulding* v. *Kendrick*, 172 Mass. 71. The ratification or adoption of the payment by Miss Tripp was made by the defendant in ignorance of the source from which the money was obtained or the circumstances attendant upon that transaction. Such action by the defendant was not in any sense a ratification of the means taken by Miss Tripp to obtain the money which was primarily to enable her to pay her own debt to the defendant. *Manning* v. *Leland*, 153 Mass. 510, 513. *Combs* v. *Scott*, 12 Allen, 493, 496. *Sears* v. *Corr Manuf. Co.* 242 Mass. 395, 401. *Lincoln* v. *Finkelstein*, 255 Mass. 486, 493. The report of the master plainly shows that the defendant did not know of the wrongful conduct of Miss Tripp until several months after the discharge of the mortgage. The payment of the mortgage by Miss Tripp, subsequently accepted and ratified by the defendant in satisfaction of her claim against

Miss Tripp, was in effect equivalent to direct payment to the defendant by Miss Tripp in discharge of her obligation to the defendant. The defendant was a transferee for value of the discharge which Miss Tripp had purchased from the bank. In these circumstances there is no imputation of knowledge of fraud based upon any principle of agency, or an imposition of the burden of fraud upon one who accepts the benefit. In the absence of imputed or constructive knowledge by the defendant of the fraud of Miss Tripp, the plaintiff has no right to follow the money into the hands of the defendant. Am. Law Inst. Restatement: Trusts, § 284. *Taylor* v. *Blakelock*, 32 Ch. D. 560.

The case at bar is distinguishable from *Newell* v. *Hadley*, 206 Mass. 335. That case involved the perfidy of a single trustee acting for two or more trusts. It was considered that whatever benefit the principal received was received through one charged with knowledge and therefore the principal was charged with knowledge. In the case at bar the defendant accepted payment to the bank by Miss Tripp in discharge of the latter's obligation to her; the defendant did not accept a benefit conferred by an agent as between herself and Miss Tripp. As far as concerned the defendant, Miss Tripp was acting independently and wholly for herself. In accepting the benefit conferred upon her by payment of the mortgage, the defendant was not accepting a benefit from her agent but was accepting payment of a debt due to her from a debtor by discharge of an independent obligation. The case at bar is also distinguishable from *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268; *Attorney General* v. *Bedard*, 218 Mass. 378; *Otis* v. *Otis*, 167 Mass. 245, and other cases on which the plaintiff relies, but it is not necessary to review them in detail.

*Decree affirmed with costs.*